**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Marcelino MILLAN–DIAZ,
Defendant–Appellee.**

No. 91–2231.

United States Court of Appeals,
Tenth Circuit.

Sept. 15, 1992.

Kristina L. Ament, Atty., Dept. of Justice, Washington, D.C. (Don J. Svet, U.S. Atty., and Presiliano A. Torrez, Asst. U.S. Atty., Albuquerque, N.M., with her, on the briefs), for plaintiff-appellant.

Rosanne Camunez, Las Cruces, N.M., for defendant-appellee.

Before BALDOCK, SETH, and KELLY, Circuit Judges.

SETH, Circuit Judge.

Defendant, Marcelino Millan–Diaz, was indicted for possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(D). The district court granted Defendant's motion to suppress marijuana found in his car as well as his statements to Border Patrol agents. The United States appeals. We affirm.

On July 9, 1991, at approximately 1:45 a.m., Defendant was stopped by United States Border Patrol Agents Clinton and Olson who were on a roving patrol. Agent Clinton testified that he stopped Defendant's vehicle for the purpose of determining whether Defendant was transporting illegal aliens. At the time he was stopped, Defendant was driving a 1978 Ford Granada and was traveling north on New Mexico Highway 185 (also known as Highway 85). There was no traffic violation.

Highway 185 begins south of Las Cruces and parallels Interstate 25 for over 50 miles until it joins the interstate near Arrey, New Mexico. Agent Clinton testified that traffic on Highway 185 is light in the hours between midnight and 5:00 a.m. and that he was familiar with the only three vehicles that regularly traveled that stretch of road at those hours. He also testified that when the Highway 185 checkpoint is closed, as it was on the evening of July 9, vehicles smuggling illegal aliens frequently use that route in order to avoid the checkpoint on Interstate 25.

In response to their questions, Defendant produced proper identification and told the agents that he was traveling from El Paso, Texas to Albuquerque, New Mexico. He stated that he had stopped in Las Cruces to

purchase gas but that he could not remember where.

Agent Clinton asked Defendant what was in the trunk and Defendant replied that it was empty. Clinton then asked Defendant for permission to search the trunk and Defendant consented. After confirming that no illegal aliens were present in the trunk of the car, Agent Clinton began banging inside the trunk and shook the spare tire.

The testimony differs on whether Defendant consented to a search of the remainder of the car. Agent Clinton testified that he asked Defendant's permission to search the car and that he consented. Defendant claims that he was never asked for permission to search the rest of the car.

While Agent Olson stood with Defendant at the agents' car, Agent Clinton continued to inspect the car. As he was tapping on the passenger side rocker panel he heard a dull thud instead of the hollow ring that he heard when he tapped on the driver's side rocker panel. He also noticed a damaged area in the rear wheel well in line with the rocker panel. At this point Agent Clinton suspected that something had been placed in the hollow area in the running board of the car. He detained Defendant further and asked him to accompany the agents to the Border Patrol checkpoint on Interstate 25 so that the agents could investigate the car further.

When Defendant was asked to accompany the agents to the checkpoint for a further inspection of his car, Agent Clinton was in possession of the keys to Defendant's car. The agent testified that at that point "he [the Defendant] would be considered under arrest, since his freedom of movement was under our control." However, he was not then formally arrested. Defendant consented to go to the checkpoint, and Agent Clinton drove Defendant's car while Defendant rode with Agent Olson in the Border Patrol car. This was a distance of 18 to 20 miles. Defendant was put in the checkpoint building. At the checkpoint, Agent Clinton removed the rocker panel step plate and found a compartment containing approximately 17 pounds of marijuana.

After Defendant was formally placed under arrest and was read his *Miranda* rights, he agreed to answer questions. Defendant admitted that his car contained 10 to 15 pounds of marijuana which belonged to him but he refused to answer questions regarding his supplier.

An indictment was returned against Defendant charging him with possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(D). Before trial, Defendant moved to suppress the marijuana found in his car and his statements made to Border Patrol agents while in custody.

The district court granted the motion to suppress. The court found that the agents had reasonable suspicion that Defendant was transporting illegal aliens but that the suspicion was dispelled once the agents looked in the vehicle and it became obvious that Defendant was the only person traveling in it. The court held that the search from that point forward was unlawful because Defendant was effectively under arrest without probable cause. The court suppressed the evidence taken from Defendant's vehicle and his statements to Border Patrol officers as fruit of the poisonous tree.

The initial stop and detention of Defendant is not an issue in this case. The district court properly found that the agents had reasonable suspicion of smuggling of illegal aliens to justify the stop.

The issue here is whether the agents' continued detention of Defendant after it was obvious that there were no other passengers in the car was an unreasonable seizure under the Fourth Amendment. The Supreme Court has held that an investigative detention, such as the one at issue here, must "last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229. "The scope of the detention must be carefully tailored to its underlying justification." *Id.* In this case, the agents' further detention

of Defendant was not justified by the circumstances and exceeded the limits of a *Terry* investigative stop. *See also United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605; *United States v. Walker,* 933 F.2d 812 (10th Cir.); and *United States v. Guzman,* 864 F.2d 1512 (10th Cir.).

The purpose of the stop, to investigate suspicion of illegal alien smuggling, was satisfied as soon as the agents approached Defendant's vehicle and determined that Defendant was the only passenger. Any doubt about the presence of illegal aliens was surely dispelled once Agent Clinton peered into the trunk of the car. Thus, the reasonable suspicion necessary to continue the encounter with Defendant had disappeared. *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607.

At this point, the agents should have terminated the encounter and allowed Defendant to go on his way. Agent Clinton's actions in searching the remainder of the car were not supported by reasonable suspicion or probable cause and thus exceeded the permissible scope of the investigatory detention. Therefore, we hold that the search of Defendant's vehicle was unreasonable under the Fourth Amendment and the district court properly suppressed the evidence that was the product of the illegal search.

Also, Defendant was illegally detained because the agent's reasonable suspicion had disappeared. "[S]tatements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention...." *Florida v. Royer,* 460 U.S. at 501, 103 S.Ct. at 1325. Defendant's statements to the agents after his arrest and transportation to the Interstate 25 checkpoint were voluntarily given but were clearly the product of the illegal detention. Thus, the district court correctly suppressed Defendant's statements.

The Government argues that Defendant's further detention was reasonable and justified by Defendant's nervous behavior. This position is not persuasive. In all search and seizure cases of the type here concerned, the Government argues that a defendant's nervousness, either alone or in conjunction with other factors, supports the contested search or seizure. This repetitive assertion by the Government in all cases of this kind must be treated with caution. It is common knowledge that most citizens, and especially aliens, whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness. The recital of Defendant's alleged nervousness, which was denied, cannot be sufficient to create a meaningful suspicion of drug smuggling in these circumstances.

Accordingly, the judgment of the District Court for the District of New Mexico is AFFIRMED.