FILED
United States Court of Appeals
Tenth Circuit

July 15, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SHERRY AMUNDSEN,

      Plaintiff–Appellee,

v.

KRISTIN JONES,

      Defendant–Appellant.

No. 06-4310

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:05-CV-0939 TC)**

Peter Stirba (Sarah E. Spencer with him on the briefs), Stirba & Associates, Salt Lake City, Utah, for the Defendant–Appellant.

C. Michael Lawrence, C. Michael Lawrence, P.C., Taylorsville, Utah for the Plaintiff–Appellee.

Before **LUCERO**, **HOLLOWAY**, and **EBEL**, Circuit Judges.

**LUCERO**, Circuit Judge.

Deputy Kristin Jones appeals the district court's partial denial of her motion for summary judgment based on qualified immunity. Jones stopped Plaintiff Sherry Amundsen after observing her improperly change lanes and

weave between lanes. During the course of the stop, Jones administered roadside sobriety tests and ultimately arrested Amundsen for driving under the influence. Amundsen later submitted to toxicology tests that revealed she was not intoxicated. She then filed a complaint under 42 U.S.C. § 1983, claiming violations of her Fourth Amendment right to be free from unreasonable searches and seizures.

Jones moved for summary judgment on the basis of qualified immunity. The district court granted the motion in part and denied it in part. Specifically, the court found that Jones was not entitled to qualified immunity from Amundsen's claims that the administration of roadside sobriety and toxicology tests violated her constitutional rights.

On appeal, we consider whether Jones violated Amundsen's clearly established rights with respect to two actions: administering the roadside sobriety tests and ordering the toxicology tests. We conclude that in conducting a roadside sobriety test under the circumstances as alleged by Amundsen, Jones did not violate Amundsen's constitutional right. In addition, the record reveals that Amundsen voluntarily consented to the toxicology tests, and consequently a Fourth Amendment violation with regard to those tests did not occur. We reverse the denial of summary judgment.

# I

In March 2005, Jones, a deputy in the Utah County Sheriff's Office, was patrolling Interstate 15 near Sarasota Springs, Utah. At the time, she was accompanied by a volunteer "ride-along," Jeffrey Bird, who, although not a member of the department, frequently joined officers on patrol. Both Jones and Bird observed Amundsen's black Ford Explorer traveling in the far left lane of the highway below the speed of traffic, then saw the car weave between lanes and ultimately change lanes without signaling. Amundsen admits she changed lanes without signaling, but denies the other allegations. She claims that she was trying to avoid a car in front of her, which was driving slowly and erratically.

After stopping the Explorer for improperly changing lanes, Jones looked into the vehicle and saw Amundsen behind the wheel. She also saw Amundsen's husband and daughter in the car. According to Jones, when she pointed her flashlight into the interior of the vehicle, she noticed that Amundsen's pupils were constricted, and her daughter's pupils were not. Other than the constricted pupils, Jones testified that she observed neither other abnormal physical characteristics, such as watery or bloodshot eyes, nor the smell of alcohol on Amundsen's breath.

In response to Jones' request for a drivers' license and vehicle registration, Amundsen replied that she did not have her license with her. Jones claims that Amundsen awkwardly "leaned into" her during this conversation. She did

provide a copy of the automobile registration, which had an expiration date of January 2005, in contrast with the car's license plate, which displayed an expiration date of November 2005.

Because the expiration dates did not match, Jones asked Amundsen to step out of the vehicle and note the different date on the license plate. Jones testified that Amundsen stumbled while getting out the vehicle. Amundsen denies that she had any difficulty in doing so. She was unable to explain the discrepancy, attributing car registration responsibilities to her husband.

A series of roadside sobriety tests followed. The parties dispute whether Jones administered the appropriate tests, whether she gave clear directions, and whether Amundsen failed or passed the tests. Based on Amundsen's test performance, the observed driving patterns, constricted pupils, and stumbling, Jones arrested Amundsen for driving under the influence ("DUI"), as well as for improper vehicle registration, improper lane travel, and improper lane change.

Upon learning she was arrested for DUI, Amundsen stated that she told Jones, "Well, take me to the hospital. I'll take any of the tests you want me to take." Jones drove her to the county jail, where Amundsen was asked to provide breath, urine, and blood samples to check for the presence of alcohol and drugs. Amundsen submitted to these toxicology tests. All were negative. Charges were filed against Amundsen but, with the exception of an improper vehicle registration violation, later dismissed.

Soon thereafter, Amundsen filed a § 1983 complaint against Jones and the Utah County Sheriff's Office, alleging violations of her right to be free from unreasonable searches and seizures, as well as her rights to due process and equal protection.[1] She claimed both the stop and her arrest were unlawful.

Jones moved for summary judgment on the basis that Amundsen's claims were barred by qualified immunity.[2] In her response, Amundsen conceded the stop was lawful at its initiation, but contended that Jones exceeded the scope of the stop when she administered the sobriety tests. At a hearing on the motion, the district court raised an additional issue sua sponte: whether the toxicology tests at the jail constituted an unconstitutional search or seizure. Jones responded that this issue had not been raised by Amundsen, and that Amundsen had consented to the tests.

The district court determined that the initial stop and the eventual arrest were lawful as Jones had probable cause of a traffic violation to support both events. It found, however, that there were several issues of disputed fact regarding the extension of the stop to perform sobriety testing and the administration of toxicology testing. The parties disputed whether Amundsen's

[1] Amundsen did not elaborate on these latter two claims before the district court, and she does not raise them on appeal.

[2] Utah County, representing the sheriff's office, also moved for summary judgment because Amundsen failed to identify any county policy responsible for her deprivation of rights, and the district court granted the motion. Amundsen has not asserted a cross-appeal of this grant of summary judgment.

pupils were constricted, whether she had stumbled when getting out of her car, whether the sobriety tests were properly administered, and whether she had failed those tests. Viewing the contested facts in the light most favorable to Amundsen, the court concluded that a reasonable jury might find that Jones lacked reasonable suspicion of intoxication and that the sobriety tests therefore had exceeded the scope of the stop. Similarly, the court found that these disputed facts also called into question whether Jones had probable cause to justify the toxicology tests. Concluding that Amundsen's rights were clearly established at the time of the stop and testing, the district court denied summary judgment on both issues.

Following denial of her motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), Jones filed this timely appeal.

**II**

Amundsen contends that we lack jurisdiction over this interlocutory appeal because Jones seeks review of the district court's application of the law to the facts. We disagree.

Orders denying qualified immunity are appealable to the extent that they resolve abstract issues of law. Shrum v. City of Coweta, 449 F.3d 1132, 1137 (10th Cir. 2006). We will not hear an appeal when the question is "the sufficiency of the evidence or the correctness of the district court's findings with respect to a genuine issue of material fact." Id. An appeal is proper if the defendant sets off to show that the law was not clearly established at the time of

the challenged action, or that qualified immunity is proper even under the plaintiff's version of the facts. Mitchell v. Forsyth, 472 U.S. 511, 528 (1985); see also Fogarty v. Gallegos, ___ F.3d ___, 2008 WL 1765018, at *4 (10th Cir. Apr. 18, 2008). Because we may review only legal issues, we must accept any facts that the district court assumed in denying summary judgment. Id.

Jones argues that she is entitled to qualified immunity because even under Amundsen's version of the facts, her rights were not violated. Alternatively, she claims that Amundsen failed to demonstrate that the rights Jones allegedly violated were clearly established.

Regarding Amundsen's claim that the field sobriety tests violated her Fourth Amendment rights, Jones asserts that Amundsen's erratic driving alone created reasonable suspicion of intoxication sufficient to justify the tests. Although Amundsen disputes the extent to which her driving was irregular, she admits that she improperly changed lanes. Moreover, the district court stated that both Jones and the volunteer ride-along, Bird, observed Amundsen weaving across lane lines, indicating that the district court assumed this fact in reaching its decision. Accordingly, we have jurisdiction to determine if weaving and an improper lane change, standing alone, are sufficient to create a reasonable suspicion of intoxication. Similarly, whether Amundsen's rights were clearly established constitutes an abstract question of law over which we have jurisdiction.

- 7 -

With respect to Amundsen's claim arising from the toxicology tests, Jones relies on the uncontested fact that Amundsen consented to these tests and urges that even under Amundsen's version of the facts, this consent was voluntary.  The legal questions of the effect of consent and the voluntariness of that consent also fall within our jurisdiction.

## III

Before considering the merits of Jones' claims on appeal, we must address a preliminary dispute regarding what facts were properly before the district court. Jones contends that because Amundsen failed to comply with the district court's local rules regarding the proper form of pleadings, the district court should have treated Amundsen's response as an admission of all of the facts alleged by Jones. We review a district court's application of its local rules for an abuse of discretion.  Roth v. Green, 466 F.3d 1179, 1190 (10th Cir. 2006).

Pursuant to District of Utah Civil Rule 56-1(c), Jones claims that Amundsen was required to provide a clear statement of facts with citations to the record.  This rule provides:

> A memorandum in opposition to a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered, must refer with particularity to those portions of the record on which the opposing party relies and, if applicable, must state the number of the movant's fact that is disputed.  All material facts of record meeting the requirements of Fed. R. Civ. P. 56 that are set forth with particularity in the statement of the movant will be deemed admitted for the purpose of

summary judgment, unless specifically controverted by the statement of the opposing party identifying material facts of record meeting the requirements of Fed. R. Civ. P. 56.

In its summary judgment order, the district court noted that Amundsen failed to comply with the requirements of Rule 56-1(c), and instead "simply recount[ed] her own version of the facts, without making any reference to the factual statements submitted by Defendants and providing only one record citation in the nearly four pages devoted to her factual exposition."  Recognizing that this deficiency in her pleadings allowed it to treat all of Jones's factual assertions as admitted, the court nevertheless declined to do so.  Instead it ruled that "there are relatively few facts at issue and . . . the court is able to easily identify those facts by reviewing the parties' briefs."

Jones maintains that the language of Rule 56-1(c) is mandatory—a nonmovant "must" provide a factual statement supported by record citations, and the movant's statement "will" be deemed admitted if the nonmovant fails to comply with the rule.  Jones acknowledges that in Walker v. City of Orem, 451 F.3d 1139, 1156 (10th Cir. 2006), involving a similar situation, we deferred to the district court's decision to consider the plaintiff's statement of facts, despite a failure to comply with a local pleading rule.  Given this precedent, and the relatively few facts at issue in this case, we cannot conclude that the district court abused its discretion in considering Amundsen's version of the facts.  Thus, the

facts as alleged by Amundsen, as well as those assumed by the district court, guide our review.

**IV**

Jones insists that qualified immunity bars Amundsen's claims against her, entitling her to summary judgment. We review de novo a district court's decision regarding qualified immunity. Nelson v. McMullen, 207 F.3d 1202, 1205 (10th Cir. 2000).

On a motion for summary judgment, we generally view the evidence in the light most favorable to the nonmoving party. Bisbee v. Bey, 39 F.3d 1096, 1100 (10th Cir. 1994). When the defendant seeks summary judgment on the basis of qualified immunity, however, the plaintiff bears the initial burden of proving that: (1) the officer's actions violated a constitutional right, and (2) this right was clearly established at the time of the conduct at issue. Nelson, 207 F.3d at 1206 (justifying this special standard based on "the importance of resolving immunity questions at the earliest possible stage in litigation" (quotation omitted)). If the plaintiff makes this two-part showing, the burden then shifts back to the defendant to demonstrate "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. (quotation omitted).

**A**

With respect to the roadside sobriety tests, Jones proposes that Amundsen's erratic driving by itself created reasonable suspicion of intoxication. According

to Jones, this suspicion justified both the initial stop and the subsequent roadside testing. Because the administration of the tests was supported by reasonable suspicion, Jones claims, Amundsen has failed to show the violation of a constitutional right. Amundsen concedes that the stop was initially justified due to her improper lane change, but does not appear to concede that her driving pattern gave rise to reasonable suspicion of driving under the influence of drugs or alcohol. She argues that the roadside sobriety tests fell outside the proper scope of the stop.

We review the permissibility of a traffic stop "under the principles pertaining to investigatory detentions set forth in Terry v. Ohio." United States v. Tibbetts, 396 F.3d 1132, 1136 (10th Cir. 2005) (citing 392 U.S. 1 (1968)). That is, we first consider "whether the officer's action was justified at [the stop's] inception," and then whether the officer's subsequent conduct "was reasonably related in scope to the circumstances that justified the interference in the first place." Id. Pursuant to this standard, we must first determine whether Amundsen's driving justified the initial stop by providing reasonable suspicion of driving under the influence. If so, we then must determine whether the field sobriety tests exceeded the scope of that stop.

Our reasonable suspicion determination hinges on the district court's finding that Amundsen had been weaving between lanes prior to the stop.[3] We have held on multiple occasions that weaving between lanes provides reasonable suspicion of driving under the influence. See United States v. Hunnicutt, 135 F.3d 1345, 1347-48 (10th Cir. 1998) (holding that an officer's observations of a vehicle weaving between the center line and the shoulder line four to five times over a distance of approximately five miles created reasonable suspicion that the driver was under the influence); United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995) (holding that observations of a driver swerving from the outside lane, straddling the center line, and then swerving back to the outside lane gave rise to a reasonable suspicion that the driver was driving under the influence); United States v. Rodriguez-Pando, 841 F.2d 1014, 1017 (10th Cir. 1988) (holding that a car that "mov[ed] from side to side," "left the paved portion of the road," and "weaved over the center of the road" created reasonable suspicion of driving while intoxicated). We have also held that drifting onto the shoulder twice creates reasonable suspicion of driving under the influence. United States v. Ozbirn, 189 F.3d 1194, 1199 (10th Cir. 1999).

---

[3] Although before this court Amundsen contends that she did not weave prior to the traffic stop, on an interlocutory appeal, we must accept the undisputed facts as outlined by the district court. See Fogarty v. Gallegos, 523 F.3d 1147, 1154 (10th Cir. 2008). Were we reviewing the appeal of a final order on summary judgment, we would review the facts de novo. See Bradford v. Wiggins, 516 F.3d 1189, 1194 (10th Cir. 2008).

There are limits, however, on the extent to which weaving can serve as a factor creating reasonable suspicion of driving under the influence. For instance, an isolated incident of crossing into another lane will not ordinarily create reasonable suspicion of driving while impaired. See United States v. Gregory, 79 F.3d 973, 978 (10th Cir. 1996). Nor will weaving within a lane, without more, ordinarily create reasonable suspicion of driving under the influence. United States v. Lyons, 7 F.3d 973, 976 (10th Cir. 1993) ("Indeed, if failure to follow a perfect vector down the highway or keeping one's eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of privacy."), overruled on other grounds by Botero-Ospina, 71 F.3d at 787.

Turning to the case at bar, we conclude that Amundsen's conduct created reasonable suspicion of driving under the influence. The district court found that she weaved repeatedly between the left and center lanes. Accordingly, her conduct does not constitute the de minimis weaving at issue in Gregory and Lyons. Instead, Amundsen's driving is similar to the conduct we addressed in Hunnicutt, Botero-Ospina, and Ozbirn. Read together, those cases stand for the proposition that any repeated weaving between lanes gives rise to reasonable suspicion of driving under the influence. Amundsen's engagement in such conduct thus created reasonable suspicion that she was driving under the influence of drugs or alcohol.

With this in mind, we turn to <u>Terry</u>'s second prong. In general, an investigative detention complies with the second prong if it "last[s] no longer than is necessary to effectuate the purpose of the stop." <u>United States v. Millan-Diaz</u>, 975 F.2d 720, 721 (10th Cir. 1992) (internal quotation marks omitted) (quoting <u>Florida v. Royer</u>, 460 U.S. 491, 500 (1983)). In other words, "[t]he scope of the detention must be carefully tailored to its underlying justification." <u>Royer</u>, 460 U.S. at 500. If the officer's conduct during the stop is reasonably related to the circumstances justifying that stop, the officer may continue that conduct until "the purpose of the stop is satisfied and any underlying reasonable suspicion [is] dispelled." <u>United States v. Edgerton</u>, 438 F.3d 1043, 1047 (10th Cir. 2006).

In this case, the purpose of the initial stop was, at least in part, to investigate a reasonable suspicion that Amundsen was driving under the influence. Thus, it follows that Jones' use of various field sobriety tests to determine whether Amundsen was in fact intoxicated did not exceed the scope of the stop.[4] <u>See, e.g.</u>, <u>United States v. Caine</u>, 517 F. Supp. 2d 586, 589 (D. Mass.

_____

[4] We recognize that most cases addressing potential Fourth Amendment violations arising from traffic stops for suspicion of driving under the influence will involve additional indicia of intoxication beyond the suspect's driving pattern. <u>See, e.g.</u>, <u>State ex rel. Verburg v. Jones</u>, 121 P.3d 1283, 1286 (Ariz. Ct. App. 2005) (holding that reasonable suspicion justified the field sobriety tests because the driver drove erratically, had bloodshot and watery eyes, slurred speech, and had trouble exiting the vehicle); <u>Dixon v. State</u>, 737 P.2d 1162, 1163 (Nev. 1987) (holding that reasonable suspicion justified the field sobriety tests where the driver weaved across lanes, stumbled out of the vehicle, swayed while standing, and admitted to drinking three beers). Simply because these indicia are

(continued...)

- 14 -

2007) ("Courts have deemed field sobriety tests to be within the scope of the initial stop, when the stop is based on a reasonable suspicion that the driver was under the influence of alcohol." (citing Rogala v. Dist. of Columbia, 161 F.3d 44, 52 (D.C. Cir. 1998)); see also Carlsen v. Duron, No. 99-4065, 2000 WL 1205822, at *3 (10th Cir. Aug. 24, 2000) (unpublished) (concluding that field sobriety tests were within the scope of an initial stop justified by a reasonable suspicion of driving under the influence);[5] cf. Wilder v. Turner, 490 F.3d 810, 815 (10th Cir. 2007) ("A field sobriety test is a minor intrusion on a driver only requiring a reasonable suspicion of intoxication and an easy opportunity to end a detention before it matures into an arrest." (quotation omitted)).

The record also does not demonstrate that the underlying reasonable suspicion had dissipated prior to the field sobriety tests. Although the district court found that the evidence regarding Amundsen's behavior during the stop did not provide additional evidence of impairment, the court's findings do not demonstrate that Amundsen's conduct dispelled Jones's earlier suspicions of

---

[4](...continued)
often noted by officers and reviewing courts, however, does not mean that an officer must possess facts in addition to an improper driving pattern in order to reasonably suspect that the driver is under the influence of drugs or alcohol. Instead, our precedent counsels that driving conduct alone can establish reasonable suspicion of impairment, and thus, no additional indicium of intoxication is necessary to justify a roadside sobriety test.

[5] Unpublished decisions of this court are not precedential. We cite Carlsen only for its persuasive value. See 10th Cir. R. 32.1(A).

intoxication.  Cf. United States v. McSwain, 29 F.3d 558, 561-62 (10th Cir. 1994)

(holding that an officer violated the Fourth Amendment because the reasonable

suspicion of a traffic violation regarding a temporary registration sticker

completely dissipated when the officer approached the car and determined the

sticker was valid); Millan-Diaz, 975 F.2d at 722 (holding that an officer

impermissibly expanded the scope of a stop after a search of the vehicle

completely dispelled the reasonable suspicion of illegal alien trafficking).

Here, Jones had an articulable suspicion that Amundsen was intoxicated

based on her driving behavior.  That entitled Jones to conduct the standard

roadside sobriety tests in their entirety in order to confirm or dispel her

reasonable suspicion of intoxication.  Unlike in McSwain and Millan-Diaz, the

officer here received no clear refutation of the earlier suspicion of intoxication,

and thus she was not required to abort the roadside sobriety tests that were

warranted by Amundsen's driving behavior.  Accordingly, Amundsen failed to

demonstrate that Jones violated the Fourth Amendment, and we reverse the

district court's denial of qualified immunity on this claim.

**B**

Regarding the toxicology tests, the district court also erred in denying

summary judgment to Jones.  Because Amundsen consented to the toxicology

exams, she failed to establish that her Fourth Amendment rights were violated.

Although Amundsen argues on appeal that her consent was not voluntary, she has not carried her burden of showing she consented as a result of police coercion.

We have previously held that "a warrantless blood test, performed without consent, is presumptively unreasonable." Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1172 (10th Cir. 2003). But a blood test conducted pursuant to valid consent does not violate the Fourth Amendment. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Dubbs v. Head Start, Inc., 336 F.3d 1194, 1207 (10th Cir. 2003). Amundsen does not dispute that she verbally consented to the tests; rather, she claims only that her consent was not valid because it was not voluntary under the circumstances.

We look to the totality of the circumstances to determine the voluntariness of the consent.[6] United States v. Soto, 988 F.2d 1548, 1557 (10th Cir. 1993). At the time Amundsen gave her consent, Jones had already arrested her for DUI. According to Amundsen, she was sitting in the patrol car when she consented to the tests, and she argues that this situation was sufficiently coercive to make her consent involuntary. She provides no authority to support this proposition, and we therefore decline to consider this argument. See United States v. Beckstead, 500 F.3d 1154, 1165 (10th Cir. 2007) (rejecting claim for lack of "reasoned argument" where party failed to provide any law in support of his claim). Our

_____

[6] Because the district court did not make any specific findings regarding the voluntariness of Amundsen's consent, we rely on Amundsen's version of the facts as well as the district court's recitation of the undisputed facts.

refusal to countenance this argument is particularly appropriate in light of her failure to plead it in the district court, thus depriving Jones of an opportunity to develop the factual record on this issue.

Not asserting any other arguments in support of her claim, Amundsen has failed to satisfy her burden of demonstrating that the toxicology exams violated a constitutional right. We therefore reverse the district court's decision on this count.[7]

**V**

For the foregoing reasons, we **REVERSE** the denial of summary judgment on qualified immunity and **REMAND** for proceedings consistent with this opinion.

---

[7] Jones urges that the district court improperly considered the constitutionality of the toxicology tests because this issue was never raised by Amundsen herself. Because we conclude that Jones is entitled to summary judgment on this issue, we need not reach the propriety of the district court's decision to raise it sua sponte.