FILED
United States Court of Appeals
Tenth Circuit

October 1, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

THOMAS L. HONEYCUTT,

      Plaintiff-Appellee,

v.

STEPHANIE RINGGOLD, Kay
County Jail Administrator, in her
individual capacity,

      Defendant-Appellant,

and

JOHN W. MITCHELL, Blackwell
Police Officer; DANA WILSON,
Ponca City Police Department;
SHIRLEY ALBUTY, Kay County
Kitchen Supervisor,

      Defendants.

No. 10-6077
(D.C. No. 5:08-CV-00140-W)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **BALDOCK**, and **HOLMES**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Thomas L. Honeycutt filed a civil rights suit under 42 U.S.C. § 1983 against various personnel at the Kay County Detention Center ("jail") alleging that the conditions of his confinement at the jail violated his constitutional rights. The district court granted summary judgment in favor of all defendants except Stephanie Ringgold, who was the jail administrator at the time. Ms. Ringgold appeals the district court's order denying her motion for summary judgment based on qualified immunity. This court has jurisdiction because the defendant is a "public official[] asserting a qualified immunity defense and the appealed issue is whether a given set of facts establishes that defendant[] violated clearly established law." *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010) (quotation omitted). We reverse.

*Background*

The uncontroverted facts are as follows.[1] Mr. Honeycutt was confined at the jail from September 30, 2007 until March 13, 2008. For three days in December 2007, liquid seeped through vent holes in the cinder block wall of his

---

[1] The district court deemed admitted the facts set forth in Ms. Ringgold's Motion for Summary Judgment because Mr. Honeycutt failed to dispute those facts as required by Rule 56.1(c) of the Local Court Rules of the United States District Court for the Western District of Oklahoma. Mr. Honeycutt does not challenge this ruling on appeal, and we find no abuse of discretion, *see Amundsen v. Jones*, 533 F.3d 1192, 1197 (10th Cir. 2008) ("We review a district court's application of its local rules for an abuse of discretion.").

cell under the toilet. Aplt. App. at 221 ¶ 2; 239-40. Mr. Honeycutt reported the leak to the jailers, and cleaning supplies were provided to clean up the liquid. *Id.* at 222 ¶ 3; 242-43. The vent continued to leak, however, and Mr. Honeycutt again reported it. *Id.* at 222 ¶ 4; 244. Ms. Ringgold went to the cell to check the leak, and stated that she would call maintenance or a plumber. *Id.* at 222 ¶ 5; 245. Two hours later, an inmate maintenance crew arrived to remedy the situation. *Id.* at 222 ¶ 5; 247, 250. The crew poured sulfuric acid into the toilet, which Mr. Honeycutt alleged caused his eyes to burn and made his breathing difficult. *Id.* at 222 ¶ 6; 247, 248, 302-03. There was no evidence that Ms. Ringgold directed or authorized the use of the sulfuric acid, or that she even knew it was used. *Id.* at 223 ¶ 11; 252.

One or two days after the maintenance crew worked on the leak, Ms. Ringgold paid a second visit to inspect the leak, which had not stopped. *Id.* at 222 ¶ 7; 250-51. Two to three hours after Ms. Ringgold's second visit, county employees arrived to work on the leak. *Id.* at 222 ¶ 7; 247-48. Ms. Ringgold checked on the situation a third time the day after the county employees finished their work. *Id.* at 222 ¶ 8; 251. The leak was fixed within three days after Mr. Honeycutt first complained. *Id.* at 223 ¶ 12; 253. Cleaning materials were available to him on a daily basis. *Id.* at 224 ¶ 17; 265.

During those three days, Mr. Honeycutt was permitted to leave his cell each day between 5:00 and 5:30 a.m. and was not required to return until 10:00 p.m.

*Id.* at 224 ¶ 19; 266. Although Mr. Honeycutt claimed the liquid was raw sewage, *id.* at 224 ¶ 20; 240, 241, 253, Ms. Ringgold testified that she never smelled raw sewage in the cell, *id.* at 224 ¶ 20; 267. According to Mr. Honeycutt, he told Ms. Ringgold, that his "cell was in bad shape and [he] was having problems breathing," and she responded "[t]hat there wasn't no other place to move [him] to." *Id.* at 299-300.

*Analysis*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotation omitted). "Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quotation and alteration omitted).

We review the denial of qualified immunity de novo, viewing the evidence in the light most favorable to the plaintiff as the non-moving party. *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008). To survive summary judgment after a defendant has claimed qualified immunity, the plaintiff must demonstrate both: "(1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146,

1150 (10th Cir. 2006) (quotation omitted). The Supreme Court has held that the federal district and appellate courts have discretion to determine which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case. *Pearson*, 129 S. Ct. at 818. In this case, because Ms. Ringgold did not violate Mr. Honeycutt's constitutional rights, we need not address whether those rights were clearly established.[2]

At all relevant times, Mr. Honeycutt was a pretrial detainee. "Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted). To establish an Eighth Amendment conditions-of-confinement claim, "a plaintiff must satisfy two requirements, consisting of an objective and [a] subjective component." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (quotation omitted). To satisfy the objective component, an inmate must allege facts to demonstrate that the deprivation was "sufficiently serious." *Fogle*

---

[2] The district court noted that Ms. Ringgold did not question that Mr. Honeycutt's entitlement to humane conditions of confinement was clearly established. Aplt. App. at 340. But she did argue that Mr. Honeycutt failed to demonstrate that the specific conditions in his cell violated clearly established law. *See id.* at 233. The inquiry into whether "the law at [the time of the incident] did not clearly establish that the officer's conduct would violate the Constitution . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quotation omitted). Therefore, the district court should have focused on the specific context of Mr. Honeycutt's claims, rather than framing those claims broadly as alleging inhumane conditions of confinement.

*v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006). "The subjective component requires the jail official to have a sufficiently culpable state of mind. In the context of prison-conditions claims, the required state of mind is one of deliberate indifference to inmate health and safety." *McBride*, 240 F.3d at 1291 (quotation omitted). We determine that Mr. Honeycutt failed to establish the subjective component; therefore, we do not address the objective component.

The subjective component is not satisfied unless a prison official knows of an excessive risk to a prisoner's health and safety and disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Moreover, "[i]f an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability under this standard." *DeSpain*, 264 F.3d at 975.

The undisputed evidence established that Ms. Ringgold responded promptly to Mr. Honeycutt's complaints of liquid seeping onto the floor of his cell. After ascertaining that work was needed, a work crew responded within a few hours of each of her first two inspections. She then followed-up a third time to confirm that the problem had been resolved. Mr. Honeycutt concedes that the entire episode lasted only three days, and after Ms. Ringgold's third inspection, he made no further complaints. Cleaning materials were available to Mr. Honeycutt and

his cellmates. There is no evidence that Ms. Ringgold directed or authorized the use of sulphuric acid in the toilet.

Mr. Honeycutt asserts that the subjective component is established by Ms. Ringgold's requirement that he remain in his cell despite the presence of injurious sulphuric acid fumes. Mr. Honeycutt's evidence on this point was his deposition testimony that he informed Ms. Ringgold that his "cell [was] in real bad shape," and told her the following day that his "cell was in bad shape and [he] was having problems breathing." Aplt. App. at 299-300; *see also id.* at 250 ("I told her about the breathing problems and she said that there just wasn't no place else to move us to."). Viewing the relevant evidence as a whole, this is insufficient to demonstrate that Ms. Ringgold knew of and disregarded an excessive risk to Mr. Honeycutt's health or safety.

On the undisputed facts, Mr. Honeycutt has failed to carry his burden to show that Ms. Ringgold was deliberately indifferent to his health and safety, thereby violating a constitutional right. Consequently, the district court erred in denying Ms. Ringgold's summary judgment motion based on qualified immunity.

*Conclusion*

The district court's order denying qualified immunity to Ms. Ringgold is REVERSED and the case is REMANDED with directions to enter summary judgment in her favor.

Entered for the Court

Jerome A. Holmes
Circuit Judge

-7-