NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3519
_____

UNITED STATES OF AMERICA

v.

ERIC SEIGLER,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 10-cr-00059-3)
District Judge:  Honorable John E. Jones, III
_____

Submitted Under Third Circuit LAR 34.1(a)
May 24, 2012

Before:  RENDELL, FUENTES and HARDIMAN, *Circuit Judges*.

(Filed:  May 30, 2012)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Eric Seigler appeals his judgment of conviction and sentence following a

conditional plea of guilty to the charge of being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1).  We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

Seigler was seated on the passenger's side of the back seat of a two-door blue Oldsmobile when it was pulled over by Pennsylvania State Police Corporal Sean Taylor and Trooper Rodney Fink. Taylor and Fink were operating as a roving DUI unit shortly after 2:00 a.m. when they spotted the car. After deciding to follow the vehicle, Taylor and Fink observed it weave and cross over the double yellow center lines three times within the span of a mile. Suspecting that the driver was intoxicated, Taylor and Fink activated their lights and the car pulled to the side of the road. As they made the stop, they learned that the vehicle's registered owner was on parole.

Taylor exited his squad car and approached the Oldsmobile on the driver's side while Fink acted as "cover" near the rear passenger's side of the car. Three men were inside. As Taylor approached the car's driver and registered owner, Shawn Davis, he noticed a switchblade on Davis's lap. Taylor notified Fink that there was a knife in the car. Davis tried to hand the knife to Taylor, but Taylor ordered him to drop the weapon and step out of the vehicle. Taylor handcuffed Davis, directed him to the rear of the

vehicle where Fink was waiting, and removed the switchblade from the car.[1]

Taylor then proceeded to the passenger's side of the car, where Dalontay Barnes was sitting in the front seat. Taylor ordered Barnes from the vehicle, cuffed him, and sent him to Fink at the rear of the car. After Barnes exited, Taylor noticed what appeared to be the butt of a handgun protruding from a yellow bag between the front seats. He made no mention of the gun to Fink because he did not wish to alert Seigler—who remained unsecured in the car—to his knowledge of the gun.

Taylor then asked Seigler to step out of the car. Because Seigler was sitting in the back seat of a two-door car, the front passenger's seat had to be folded forward to allow him to exit the vehicle. As that occurred, Taylor noticed yet another gun, which had been under the front passenger's seat, on the floor of the back seat. Taylor cuffed Seigler and directed him to the rear of the car, and then he removed both guns from the vehicle. In the yellow bag, Taylor also found "four bandannas, a gray knit cap, a Cobra two-way radio, a black pair of gloves, and on the passenger floor [he found] . . . a night vision scope, a pair of binoculars, and a digital camera." (App. 69.) He also noticed a pair of gloves and three black hoodies in the back seat.

---

[1] At the suppression hearing, Taylor and Fink provided partially contradictory testimony regarding the sequence of events during the stop. The inconsistencies included their accounts of who seized the knife and how. Taylor testified that he removed the knife from the car as he was securing Davis, while Fink testified that he asked the front passenger to hand him the knife while Taylor was bringing Davis to the rear of the vehicle. The District Court nevertheless found both officers credible, and Seigler does not contest that finding on appeal.

Once outside the vehicle, all three men confessed to having a criminal history. They were eventually Mirandized and arrested, but the record does not clearly reveal when the arrests occurred.

A grand jury indicted Seigler, Davis, and Barnes (collectively, Defendants) for conspiracy to unlawfully possess a firearm in violation of 18 U.S.C. §§ 371 & 922(g)(1), (j), unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and possession of a stolen firearm in violation of 18 U.S.C. § 922(j). Defendants moved to suppress the physical and testimonial evidence obtained during the stop. After holding a hearing and receiving post-hearing briefs, the District Court denied the motions. Seigler reached a conditional plea agreement with the Government in which he reserved the right to appeal the denial of the suppression motion. He then pleaded guilty to one count of being a felon in possession of a firearm. The District Court sentenced Seigler to 72 months' imprisonment and three years of supervised release. Seigler timely filed a notice of appeal.

## II

We review factual findings following a suppression hearing for clear error, but we apply a plenary standard of review to the District Court's legal conclusions. *United States v. Lewis*, 672 F.3d 232, 236–37 (3d Cir. 2012) (citing *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010)). Seigler contends that the suppression motion should have been granted for three reasons: (1) there was no reasonable suspicion to stop the vehicle, (2)

there was no probable cause to seize him, and (3) the search of the car was unlawful.

A

An officer may stop a vehicle pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), when the officer has an objectively reasonable suspicion that criminal activity is occurring. *Lewis*, 672 F.3d at 237. "Once a valid traffic stop is initiated, 'an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation.'" *Id.* (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)). To determine whether an officer possessed an objectively reasonable suspicion, we look to the totality of the circumstances. *See United States v. Nelson*, 284 F.3d 472, 481 (3d Cir. 2002).

Pennsylvania law prohibits the operation of a vehicle while under the influence of "a sufficient amount of alcohol such that the individual is rendered incapable of safely driving." 75 Pa. Cons. Stat. § 3802(a)(1). Taylor and Fink were on a roving DUI patrol in the early morning hours when they saw the Oldsmobile weaving in its lane and crossing the double yellow center line three times within the span of a mile. Such erratic driving creates reasonable suspicion that the operator is driving under the influence. *See Amundsen v. Jones*, 533 F.3d 1192, 1198–99 (10th Cir. 2008). In addition, "[a] police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing

5

*Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)); *see Whren v. United States*, 517 U.S. 806, 819 (1996) (holding that where "officers ha[ve] probable cause to believe [a defendant] ha[s] violated the traffic code[,] . . . [a] stop [is] reasonable under the Fourth Amendment"). Pennsylvania requires a driver to drive his vehicle "as nearly as practicable entirely within a single lane," 75 Pa. Cons. Stat. § 3309(1), which Davis did not do. Thus the initial stop was justified.

Once the officers spotted the switchblade—the possession of which may have been a parole violation for Davis—and later the handguns, the focus of the stop shifted, making the individual detentions reasonable under the circumstances. Accordingly, the entirety of the *Terry* stop was legal.

B

Turning to his second argument, Seigler confuses the requirements for arrest with those for seizure during an automotive *Terry* stop. *See Brendlin v. California*, 551 U.S. 249, 257–60, 263 (2007) (differentiating seizure of a passenger during a traffic stop from "formal arrest"). While an arrest requires probable cause, *e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), police officers are permitted to order the occupants from a vehicle without any particularized suspicion during a legal stop, *Bonner*, 363 F.3d at 216. The Constitution also allows officers to reasonably detain and even handcuff those occupants without probable cause to protect the officers' safety. *See Arizona v. Johnson*, 555 U.S. 323, 331–32 (2009); *Brendlin*, 551 U.S. at 258; *United States v. Johnson*, 592

6

F.3d 442, 447–48 (3d Cir. 2010) ("[P]lacing a suspect in handcuffs while securing a location or conducting an investigation [does not] automatically transform an otherwise-valid *Terry* stop into a full-blown arrest.").  Taylor testified that he handcuffed the three occupants solely for his own and Fink's safety—but he did not arrest them at first—as he progressively learned of the weapons in the vehicle, knowing full well that Davis may have violated his parole and that the occupants outnumbered the officers three to two. Once Taylor saw that a firearm had been concealed at Seigler's feet and learned that Seigler had a criminal history, there was probable cause to believe that Seigler had illegally possessed the firearm.  Therefore, neither the initial detention nor the ultimate arrest was contrary to the Fourth Amendment.

C

Finally, Seigler contends that the weapons should have been suppressed as the fruit of a warrantless search.  But Seigler, who was not the owner of the vehicle and therefore had no reasonable expectation of privacy in it, lacks standing to challenge the search. *United States v. Mosley*, 454 F.3d 249, 252–53 (3d Cir. 2006).  Moreover, even if he had such an expectation, the seizure of the guns was permissible for two reasons.  First, the guns were in plain view from Taylor's lawful vantage point outside of the vehicle.  *See Horton v. California*, 496 U.S. 128, 134–42 (1990) (explaining that officers who have not violated the Fourth Amendment in coming to a certain location may seize evidence that immediately appears to be incriminating).  Second, the search of the vehicle incident to its

7

occupants' arrests was legal because the guns were "'relevant to the crime of arrest,'" namely an illegal weapons offense. *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in the judgment)). Consequently, no Fourth Amendment violation occurred when Taylor seized the guns in the car.

III

For the foregoing reasons, we will affirm the judgment of the District Court.

8