OPINION
{¶ 1} Jessica M. Mahaffey was found guilty pursuant to her no contest plea in the Xenia Municipal Court of operating a motor vehicle while intoxicated. Prior to the entry of the plea, the trial court had denied Mahaffey's motion to suppress evidence. Mahaffey appeals from the denial of her motion to suppress.
 {¶ 2} On December 16, 2002, at approximately 11:40 p.m., Mahaffey was stopped along U.S. 35 when State Trooper William Ward observed several traffic violations, including following too closely, marked lane violations, and speeding. When he approached the vehicle, Ward noticed a moderate odor of alcohol coming from inside the vehicle. Mahaffey and her passenger admitted that they had been drinking, and Mahaffey had some difficulty finding the paperwork that the officer had requested. Based on his observations and on her admission that she had been drinking, Ward asked Mahaffey to step out of her vehicle.
 {¶ 3} When she exited the vehicle, Ward thought that Mahaffey was flushed, that she had some difficulty balancing, and that her speech was somewhat slurred. He asked her to perform three field sobriety tests and, based on the results, Ward believed that Mahaffey would prove to have a prohibited blood alcohol concentration on a breath test. Ward placed Mahaffey under arrest and transported her to a highway patrol post for a breath test; however, Mahaffey refused to take the test. She was charged with operating a motor vehicle while intoxicated and with failure to drive within marked lanes.
 {¶ 4} Mahaffey pled not guilty and filed a motion to suppress evidence on the grounds that Ward had had no basis to ask her to exit her vehicle for the purpose of performing field sobriety tests nor probable cause to arrest her. The trial court held a hearing on the motion on March 24, 2003. The court concluded that Ward had had a sufficient basis to ask Mahaffey to perform field sobriety tests and that there had been probable cause to arrest her, thereby overruling the motion to suppress.
 {¶ 5} Mahaffey subsequently changed her plea to no contest and was convicted of her second offense of operating a vehicle while intoxicated. In exchange for her plea, the marked lanes violation was dismissed. The court sentenced Mahaffey to 180 days in jail, with 170 days suspended on the condition of no future violations in six years. Mahaffey was also fined $750 and her license was suspended for one year. Some jail time from her first offense, which had been suspended on condition of no future offenses, was reimposed consecutive to the jail time in this case.
 {¶ 6} Mahaffey raises three assignments of error on appeal.
 {¶ 7} "I. Ms. Mahaffey's conviction should be reversed and this matter remanded for further proceedings because the trial court erred in denying ms. mahaffey's motion to suppress when the trooper lacked reasonable suspicion to request that Ms. Mahaffey exit the vehicle and submit to field sobriety testing."
 {¶ 8} Mahaffey claims that Ward had an insufficient basis to ask her to perform field sobriety tests.
 {¶ 9} The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigatory stop if the officer possesses a reasonable suspicion, based on specific and reasonable facts, which, taken together with the rational inferences from those facts, warrants the belief that criminal behavior is afoot. Terry v. Ohio
(1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. The officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped is about to or is in the process of committing a crime. Id. at 20. The facts must be viewed under the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177,178.
 {¶ 10} Trooper Ward was prompted to stop Mahaffey when he saw her commit traffic violations and engage in aggressive and somewhat dangerous driving. When he approached her vehicle, he smelled alcohol. Mahaffey admitted that she had been drinking and had some difficulty producing the documents that Ward had requested. These specific facts, taken together with rational inferences from those facts, justified Ward's suspicion that Mahaffey was driving under the influence. As such, Ward acted reasonably in requesting that Mahaffey step out of the car.
 {¶ 11} The first assignment of error is overruled.
 {¶ 12} "II. Ms. Mahaffey's conviction should be reversed and this matter remanded for further proceedings because the trial court erred in denying ms. mahaffey's motion to suppress the results of field sobriety testing when said tests were not conducted in compliance with standardized testing procedures."
 {¶ 13} While field sobriety tests are a potentially effective means of identifying intoxicated drivers, these tests' reliability depends largely upon the care with which the tests are administered. State v. Homan, 89 Ohio St.3d 421, 425,2000-Ohio-212; State v. Bresson (1990), 51 Ohio St.3d 123, 127. The supreme court has held that strict compliance with testing procedures is critical because of the small margins of error that characterize field sobriety tests. Homan,89 Ohio St.3d at 425.[1]
 {¶ 14} Mahaffey claims that none of the three field sobriety tests performed by Ward complied with the National Highway Traffic Safety Administration ("NHTSA") manual's requirements and that Ward also failed to inquire about her existing physical or visual impairments, as required by the manual. The state contends that Mahaffey presented insufficient evidence of the procedures set forth in the NHTSA manual to support an argument that those procedures had not been followed.
 {¶ 15} As the state points out, Mahaffey did not seek to have a NHTSA manual, or any part thereof, admitted into evidence. As such, some of Mahaffey's arguments about Ward's failure to comply with appropriate procedures must fail. However, the state overstates its claim when it asserts that there was "no evidence presented at the hearing as to what the standardized testing procedures were." Ward's testimony does acknowledge some of the NHTSA's requirements. We will address each of the tests or requirements individually.
 {¶ 16} Mahaffey claims that Ward failed to inquire as to whether she had any visual or physical impairments, as required by NHTSA. Ward's testimony did not address this alleged requirement. Thus, in the absence of any other evidence to support the existence of such a requirement, Mahaffey was not entitled to the suppression of any evidence based upon this claim.
 {¶ 17} With respect to the walk-and-turn test and one-leg-stand, Mahaffey claims that neither was performed in strict compliance with standardized testing procedures because they were performed on the berm of the roadway, which had a slight slope for drainage. The manual requires that the tests be performed on a flat surface, and Ward acknowledged this requirement. Ward did not concede, however, that he had failed to conduct the tests in accordance with this requirement.
 {¶ 18} Mahaffey's argument stretches the requirement of strict compliance to a ridiculous point not intended by Homan
or the NHTSA. In our view, the paved berm of a highway is an adequately level surface for the purpose of conducting field sobriety tests, notwithstanding the grade necessary for proper drainage, unless there is other evidence that the berm is unusually steep or uneven. To hold otherwise would make it virtually impossible for police officers to find an appropriate place to conduct such tests in a large number of cases. We do not find this to be a reasonable interpretation of the NHTSA regulations.
 {¶ 19} Similarly, Mahaffey argues that the walk-and-turn test was improperly administered because she was required to walk an imaginary straight line rather than a "designated" or visible one. Ward testified that he could not have had Mahaffey walk a visible line without subjecting her to the danger of being in the roadway. Mahaffey presented no evidence that the term "designated line," as it is apparently used by the NHTSA, refers to a visible line rather than an imaginary line between two designated points.[2] As such, we are unpersuaded that Ward failed to comply with NHTSA requirements in administering the walk-and-turn test or that Mahaffey was entitled to suppression of these test results.
 {¶ 20} Finally, Mahaffey contends that Ward improperly administered the horizontal gaze nystagmus test ("HGN test) in that he could not determine exactly where a forty-five degree angle was in relation to Mahaffey's line of vision and did not move the pen light across her line of vision for the required four-second period. Ward testified that he determined where a forty-five degree angle was based on estimates and on his training, but admitted that he would not know if he was one degree off in his estimation. Mahaffey did not present any evidence that NHTSA standards required a different method of identifying the forty-five degree point, nor did she demonstrate that the point Ward had used was inaccurate. As such, the evidence established that Ward had properly identified a forty-five degree angle. However, Ward acknowledged that, according to the NHTSA, the pen light is supposed to be moved across the eye on the HGN test at a pace that takes four seconds from one side to the other. He also acknowledged that he came across that span in two seconds. In this respect, Ward did fail to strictly comply with the regulations for the administration of the HGN test, and the test results for this particular test should have been suppressed.
 {¶ 21} Although the trial court erred in admitting the HGN test, the flaw in the administration of the HGN test did not, in itself, warrant granting Mahaffey's motion to suppress. Mahaffey failed the other two field sobriety tests, and the results of these tests were properly admitted. Furthermore, Ward's observations of Mahaffey's driving and of Mahaffey after the traffic stop were admissible. In the context of the probable cause to arrest issue, we find the trial court's error to have been harmless. See Homan, 89 Ohio St.3d at 427. See, also, discussion of third assignment of error.
 {¶ 22} The second assignment of error is overruled.
 {¶ 23} "III. Ms. Mahaffey's conviction should be reversed and this matter remanded for further proceedings because the trial court erred in finding that the trooper had probable cause to arrest ms. mahaffey and in denying ms. mahaffey's motion to suppress all the evidence obtained subsequent to her arrest."
 {¶ 24} In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Homan, 89 Ohio St.3d at 427, citing Beck v. Ohio (1964), 379 U.S.89, 91, 85 S.Ct. 223, 225,13 L.Ed.2d 142, 145.
 {¶ 25} Based on Ward's observations of Mahaffey's driving and at the traffic stop, the results of the two field sobriety tests that were conducted in accordance with NHTSA standards, and Mahaffey's admission that she had been drinking, Ward clearly had sufficient information at the time of her arrest to believe that Mahaffey had been driving under the influence. Thus, he had probable cause for the arrest, and the trial court did not err in overruling the motion to suppress.
 {¶ 26} The third assignment of error is overruled.
 {¶ 27} The judgment of the trial court will be affirmed.
Brogan, J. and Grady, J., concur.
[1] The Ohio legislature has amended R.C. 4511.19(D)(4)(b) to permit consideration of field sobriety tests administered in substantial compliance, rather than strict compliance, with standardized testing procedures. This rule, however, did not become effective until April 2003, and it has not been applied retroactively.
[2] On cross-examination, Ward appears to agree with Mahaffey's view that a "designated" line is a visible line, but he equivocates on this point. We note that other cases discuss with approval the use of either a real or imaginary line. See, e.g.,State v. Maguire (July 30, 2001), Stark App. No. 2000CA374;State v. DePompei, 119 Ohio Misc.2d 41, 2002-Ohio-3705, ¶ 22.