**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2013-CA-91 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-CR-352 |
| v. | : | |
| | : | |
| RICARDO GREAVES, II | : | (Criminal Appeal from Clark |
| | : | County Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of June, 2014.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. #0068346, Drearie & Fischer LLC, 70 Birch Alley, Suite 240, Beavercreek, Ohio 45440
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}     Ricardo Greaves appeals from his conviction and sentence on one count of

operating a vehicle while intoxicated (OVI), a fourth-degree felony.

{¶ 2}    Greaves advances two assignments of error. First, he contends the trial court erred in failing to suppress field-sobriety test results where an arresting officer lacked reasonable, articulable suspicion to conduct the tests. Second, he claims the trial court erred in failing to allow a defense witness to testify as an expert during a suppression hearing about the expert's purported opinion that the arresting officer's administration of two field sobriety tests was not in substantial compliance with field-sobriety test standards.

{¶ 3}    The suppression-hearing transcript reflects that Ohio State Highway Patrol trooper Jason Cadle was alerted to Greaves' vehicle by an unidentified driver's call to a DUI hotline around 4:00 a.m. (Suppression Tr. at 8, 21, 38). After locating Greaves' vehicle, Cadle observed it "swerving back and forth in [its] lanes" and "taking up the roadway a little bit." (*Id*. at 8). Cadle pulled behind Greaves' car and saw it "straggling [sic] the lines." He activated his overhead lights and made a traffic stop. (*Id*.). Upon approaching Greaves, Cadle detected a "[s]trong odor of an alcoholic beverage coming from his person." In addition, the trooper noticed that Greaves' "[e]yes were red shot and glassy." Cadle also noted that Greaves "was a little disoriented." (*Id*.). Greaves admitted that he "was drinking earlier in the night when he got off of work." (*Id*. at 9).

{¶ 4}    Based on his observations, Cadle asked Greaves to step out of the car. The trooper did not notice any "obvious impairment" to Greaves' motor skills when he did so. (*Id*. at 39). Cadle then performed three standardized field-sobriety tests: the horizontal-gaze nystagmus (HGN) test, the one-leg stand test, and the walk-and-turn test. (*Id*. at 9). During the suppression hearing, Cadle testified about his experience and training with field-sobriety tests, how the tests are to be administered, how he administered them here, and how Greaves performed. (*Id*. at

9-20).

**{¶ 5}** On the HGN test, Cadle detected six clues out of six. He explained that detecting four or more clues is indicative of intoxication. (*Id*. at 12). With regard to the one-leg stand test, Cadle observed four clues. He stated that detecting two or more clues is indicative of impairment. (*Id*. at 14-15). On the walk-and-turn test, Cadle saw three clues. He testified that detecting two or more clues is considered a failure. (*Id*. at 17-18). On cross examination, Cadle stated that the standards for performing field-sobriety tests are established by the National Highway Traffic Safety Administration (NHTSA). (*Id*. at 24). After administering the tests, Cadle arrested Greaves for operating a vehicle while intoxicated. At the police station, Greaves took a breath test, which he failed. (*Id*. at 18, 38).

**{¶ 6}** The only other witness was Ken Parson, a police officer who was on medical leave. Parson testified as a defense witness. He opined at some length about the NHTSA standards and how they require field-sobriety tests to be performed. (*Id*. at 40-73). He indicated he reviewed the video of the tests performed by Greaves. (*Id*. at 43). However, the trial court refused to allow him to testify as an expert witness to give opinion testimony as to whether Cadle substantially complied with the NHTSA standards in this case. (*See*, *e.g.*, *id*. at 52-55).

**{¶ 7}** Following the suppression hearing, the trial court found substantial compliance with the NHTSA standards and overruled Greaves' motion to suppress the field-sobriety test results. (Doc. #18). Greaves then entered a no-contest plea to one count of OVI. (Doc. #20). The trial court found him guilty and imposed a two-year prison sentence. (Doc. #26). This appeal followed.

**{¶ 8}** In his first assignment of error, Greaves contends the field-sobriety test results

should have been suppressed. In support, he claims Cadle was not entitled to conduct the tests because he lacked reasonable, articulable suspicion of alcohol-related impairment.[1] Greaves stresses the absence of any "obvious impairment" to his motor skills when he exited his car. He also argues that his odor of alcohol, red and glassy eyes, and slight disorientation did not necessarily mean he was impaired and did not justify administering the tests. In support, he cites Cadle's admission that smelling of alcohol by itself does not mean a person is impaired. He also cites Cadle's acknowledgment that the time of day or a lack of sleep can affect a person's eyes. Greaves reasons that "[a]n officer cannot have a reasonable articulable suspicion that a person is intoxicated when explanations exist for the alleged indicia of intoxication that an officer is relying on[.]"

{¶ 9} Upon review, we find Greaves' argument unpersuasive. The fact that innocent explanations *could* exist for the signs of impairment Cadle saw did not preclude reasonable, articulable suspicion of intoxication. Indeed, the Ohio Supreme Court has rejected the proposition that reasonable, articulable suspicion cannot exist where each factor upon which an officer relies has a potentially innocent explanation. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 18-19; *see also State v. Patterson*, 2d Dist. Montgomery No. 23395, 2009-Ohio-4946, ¶ 25 ("When establishing a reasonable, articulable suspicion of criminal activity, the State need not exclude each and every possibility of innocent activity that might imply non-criminal behavior.").

---

[1] In the proceedings below, Greaves did not challenge Cadle's right to make a traffic stop based on the driving he observed. Instead, he argued that after making the stop the trooper lacked sufficient indicia of alcohol-related impairment to justify administering field-sobriety tests. (Suppression Tr. at 37-38).

{¶ 10} Based on our review of the record, we believe Cadle had reasonable, articulable suspicion of alcohol-related impairment to justify administering field-sobriety tests. Greaves was stopped around 4:00 a.m. after an unidentified motorist reported him to a DUI hotline. Before making a stop, Cadle observed Greaves' car "swerving back and forth in [its] lanes" and "taking up the roadway a little bit." More significantly, Cadle testified that he saw the car "straggling the lines."[2] After making a traffic stop (an act Greaves does not challenge), Cadle detected a "[s]trong odor of an alcoholic beverage coming from [Greaves'] person." His "[e]yes were [blood] shot and glassy," and he "was a little disoriented." Greaves admitted to Cadle that he "was drinking earlier in the night[.]" In our view, these facts created a reasonable suspicion of alcohol-impaired driving and justified administering field-sobriety tests.

{¶ 11} Greaves' citation to *State v. Derov*, 7th Dist. Mahoning No. 07 MA 71, 2009-Ohio-5513, fails to persuade us otherwise. In that case, the Seventh District found no reasonable, articulable suspicion to warrant field-sobriety tests where the defendant had been stopped for an expired-tag violation. In support, the Seventh District noted that a trooper had "asked Derov to submit to the field sobriety tests based solely on the time of night, Derov's red glassy eyes, and the fact he noticed a strong smell of alcohol coming from her person." *Id.* at ¶ 15. Although the defendant admitted consuming alcohol at some point during the stop, the timing of the admission was unclear and the appellate court apparently did not rely on that fact.

{¶ 12} Here the record contains relevant facts in addition to the time of night, the condition of Greaves' eyes, and the existence of a strong odor of alcohol. Specifically, Cadle received a report of a possible DUI and observed somewhat erratic driving. Greaves appeared "a

---

[2] We presume that Cadle either said or meant "straddling."

little disoriented" after being stopped. Prior to participating in field-sobriety tests, he also admitted consuming alcohol. These additional facts sufficiently distinguish the present case from *Derov*. The first assignment of error is overruled.

{¶ 13}   In his second assignment of error, Greaves claims the trial court erred in failing to qualify Ken Parson as an expert so he could render an opinion about Cadle's lack of substantial compliance with NHTSA standards.

{¶ 14}   Evidence Rule 702 states: "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information." "Determinations of expert qualifications to testify are within the discretion of the trial court. Thus, all questions concerning the admission or exclusion of this type of evidence are considered on an abuse of discretion basis." (Citation omitted) *State v. Awkal*, 76 Ohio St.3d 324, 331, 667 N.E.2d 960, 968 (1996).

{¶ 15}   In the present case, the trial court did not specify why it refused to allow Parson to express an opinion as an expert. After hearing testimony about his training and experience as a police officer and listening to competing arguments from counsel, the trial court simply declared: "I am not going to qualify this witness as an expert witness. He certainly is entitled to testify if he has pertinent, relative information. Probative information relating to this case. But he will not be permitted to render opinion testimony in this matter." (Suppression Tr. at 54-55).

{¶ 16}   Prior to the trial court's ruling, Parson testified that he had twelve and one-half

years of experience with the Monroe Police Department. (*Id.* at 41). He held a two-year degree in criminal justice and twice had been trained in OVI detection. Parson testified that he had learned about NHTSA standards for field-sobriety tests during his formal training. (*Id.* at 44). In addition, he had performed "hundreds" of field-sobriety tests and had been involved in roughly fifty OVI arrests. (*Id.* at 41, 43). In connection with his work as a police officer, Parson previously had testified about field-sobriety tests in OVI cases. (*Id.* at 51). On cross examination, however, he acknowledged that he never had testified as an expert witness. (*Id.* at 47). He also never had written a learned treatise or been part of a research group developing field-sobriety test standards. (*Id.*). He had not administered a field-sobriety test in more than a year and never had testified about another officer's performance of a test. (*Id.* at 48). Nor had he given a seminar about field-sobriety tests or published any research on the topic. (*Id.* at 48-49). Perhaps most importantly, we did not see testimony that he had any particular knowledge, experience or training, as to what exactly "substantial compliance" means in the context of field sobriety tests.

{¶ 17} Based on the foregoing evidence, we have difficulty saying that the trial court abused its discretion. Parson plainly did not qualify as an <u>academic</u> expert in the administration of field-sobriety tests. We have also noted the lack of evidence about his understanding of the meaning of "substantial compliance." If we were deciding the issue, however, we might be inclined to find that he qualified as an expert based on specialized knowledge, experience, and training, namely his twelve years of law-enforcement experience, his formal training on NHTSA standards, and his performance of hundreds of field-sobriety tests. Indeed, testimony in the form of opinion is not objectionable solely because it embraces the ultimate issue to be decided by a trier of fact. Evid. R. 704. We further recognize that whether the trial court abused its discretion

in excluding expert testimony is a close question made more difficult by its failure to articulate its reasoning. But in the context of this record, where the witness was permitted to testify at length about NHTSA standards and his observations from the cruiser video (the same video that was presented to the trial court) we cannot say that the trial court abused its discretion by excluding his opinion about lack of "substantial compliance."

{¶ 18}   In any event, even if we accept Greaves' assertion that the trial court abused its discretion in not allowing Parson to testify as an expert on the issue of "substantial compliance," the error was harmless. Even if admissible, the opinion testimony the trial court precluded would not have been particularly helpful. Greaves essentially wanted Parson to opine that Cadle did not substantially comply with NHTSA standards when administering the field-sobriety tests. While disallowing this opinion testimony, the trial court permitted Parson to testify at length about the applicable standards and what they require. (*Id*. at 40-73). This court has recognized that substantial compliance with NHTSA's requirements "is a legal standard for a court's determination." *State v. Davis*, 2d Dist. Clark No. 2008 CA 65, 2009-Ohio-3759, ¶ 18. For that reason, an arresting officer is not required to testify that he performed field-sobriety tests in substantial compliance with NHTSA. Conversely, an opinion that the tests were not in substantial compliance would not have supplanted the trial court's obligation to determine whether the facts supported the legal conclusion. A court must review the evidence and "independently" determine whether the officer substantially complied with the standards. *Id.* at 18-19.

{¶ 19}   Here Cadle testified about how he performed the tests, and Parson testified about what the NHTSA standards required. The trial court was capable of comparing the two itself and determining whether substantial compliance existed without Parson's   expert

opinion. Cf. *Waste Mgt. of Ohio v. Cincinnati Bd. of Health*, 159 Ohio App.3d 806, 2005-Ohio-1153, 825 N.E.2d 660, ¶ 57 ("As to Robert Galbraith, CUFA argues that ERAC erred when it refused to allow Galbraith to testify as to whether WMO was in substantial compliance with the environmental laws. ERAC qualified Galbraith as an expert in hydrogeology and groundwater issues, and he provided substantial testimony on that basis. However, ERAC limited his testimony regarding compliance. * * * ERAC did not abuse its discretion when it excluded this testimony because, first, the question whether WMO was in 'substantial compliance' with Ohio environmental laws is a legal question, which requires no expert testimony, and, second, the issue of substantial compliance is one that is well within ERAC's expertise, based on its own review of the record.").

{¶ 20} Finally, insofar as Greaves' suppression motion challenged his arrest, we note his concession below that the one-leg stand test was administered in substantial compliance with NHTSA standards. (Suppression Tr. at 89). Therefore, no basis existed for suppressing the results of that test. Even if we assume, arguendo, that the results of the other two tests were subject to suppression and ignore them, Cadle still had probable cause to arrest Greaves for OVI based on his observations and Greaves' poor performance on the one-leg stand test. As set forth above, Greaves was stopped around 4:00 a.m. after someone reported a possible DUI and Cadle observed erratic driving. Upon approaching Greaves, the trooper detected a strong odor of alcohol. Greaves' eyes were bloodshot and glassy, he appeared a little disoriented, and he admitted having consumed alcohol. He then failed the one-leg stand test by swaying, bringing his arms away from his side, hopping, and putting his foot down. (*Id*. at 14). According to Cadle, any two of these four actions were enough to establish "signs of impairment." (*Id*. at 15). The video

demonstrates that his ability to walk, aside from the NHTSA clues that could be evident from the walk-and-turn test, was appreciably impaired. Even if we discount the results of the HGN test and the NHTSA walk-and-turn test, we believe the remaining evidence gave Cadle probable cause to arrest Greaves for OVI. For the foregoing reasons, the second assignment of error is overruled.

{¶ 21}   The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and WELBAUM, J., concur.

Copies mailed to:

Lisa M. Fannin
John A. Fischer
Hon. Douglas M. Rastatter

Case Name:    *State of Ohio v. Ricardo Greaves, II*
Case No:           Clark County App. No. 13-CA-91
Panel:             Froelich, Hall, Welbaum
Author:            Michael T. Hall
Summary: