[Cite as *State v. Berry*, 2019-Ohio-1254.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28199 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-3589 |
| | : | |
| TAURUSS A. BERRY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 5th day of April, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
	Attorney for Plaintiff-Appellant

ADELINA E. HAMILTON, Atty. Reg. No. 0078595, 117 South Main Street, Fourth Floor, Dayton, Ohio 45422
	Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} The State appeals from a decision partly granting a suppression motion filed by Defendant-Appellee, Tauruss Berry. According to the State, the trial court erred in suppressing field sobriety test results because the arresting officer had a reasonable articulable suspicion that Berry was driving under the influence of drugs or alcohol. The State also asks that we overrule our prior opinions in *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550 (March 24, 2000) and *State v. Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664 (Dec. 1, 2000), and their progeny.

{¶ 2} For the reasons discussed below, the trial court did not err in granting in part Berry's motion to suppress. Although the holdings in *Spillers* and *Dixon* have been subject to credible criticism, the facts in this case present an insufficient basis to justify overruling our prior decisions. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} In December 2017, the State filed an indictment charging Berry with several offenses, including two felonies related to carrying and handling of a firearm in a vehicle, and three misdemeanors related to operating a vehicle while under the influence (the presence of cocaine and marijuana metabolites) ("OVI"). After pleading not guilty, Berry filed a motion to suppress based on four grounds. As pertinent here, Berry alleged that the arresting officer lacked reasonable suspicion to believe he was driving while impaired and that he was improperly arrested for OVI without a warrant.

{¶ 4} At the suppression hearing, Ohio State Highway Patrol Officer David Shockey was the only witness. Shockey had been a state trooper for more than 19 years, and he described the training he had received in recognizing impaired drivers and administering field sobriety tests. After outlining his credentials, Shockey gave the following account of the incident.

{¶ 5} On February 12, 2017, Shockey was on patrol, wearing a uniform and driving a marked cruiser. Around 2:30 a.m., he was traveling northbound on North Main Street in Dayton, Ohio, and passed Berry, who was traveling southbound. Shockey turned his cruiser around and began following Berry. Shockey observed Berry traveling, conservatively, at 45 miles per hour, which was ten miles over the speed limit. He also saw Berry make two lane changes without using a turn signal. The lane changes were slow. Berry was initially in the left lane, and went from the left lane to the right lane. He later went back to the left lane from the right. The lanes were marked, and the car's wheels remained within its lane of travel.

{¶ 6} After observing the traffic violations, Shockey activated his light bar, and Berry pulled over to the curb. According to Shockey, Berry was compliant in pulling over. Shockey then approached the driver's side window and asked for Berry's registration, driver's license, and proof of insurance. Berry was able to produce these items without fumbling around or looking for things. Berry also did not have slurred speech and was polite and cordial. Shockey stated that, despite the circumstances, Berry "was a pleasure to be with that night." Suppression Transcript p. 26.

{¶ 7} Shockey further said that he had no problems communicating with Berry; he also did not say in the impaired driver report that he saw any sign of drug use, like pupil

size. Shockey did say that Berry's eyes were "bloodshot and glassy," and that he "detected the slight odor of an alcoholic beverage." *Id.* at p. 12. When Shockey asked if Berry had been drinking, Berry stated that "he really hadn't been drinking that evening." *Id.* at p. 14.

{¶ 8} Due to the bloodshot, glassy eyes, the slight odor of alcohol, and the traffic violations, Shockey felt Berry could possibly be impaired, so he asked Berry to step out of the car and perform a field sobriety test. *Id.* at pp. 12 and 28-29. As Berry approached the rear of his own car, Shockey observed that Berry "kind of was uneasy on his feet, and kind of like brushed up against it [the car]." *Id.* at p. 13.

{¶ 9} At that point, Shockey administered three National Highway Traffic Safety Administration tests (horizontal nystagmus, one-leg stand, and walk-and-turn), as well as two that are not part of NHTSA protocol (an ABC test and a counting test). He concluded that Berry was impaired and placed him under arrest. As noted, Berry was then charged with the weapons and OVI violations.

{¶ 10} After holding a suppression hearing, the trial court issued a decision in October 2018, sustaining in part and overruling in part the motion to suppress. As a result, the court excluded evidence pertaining to the sobriety tests, Berry's arrest, the search of Berry's car, and any statements that Berry had made. The State then filed a timely notice of appeal pursuant to R.C. 2945.67(A) and Crim.R. 12(K), and also filed the appropriate certification under Crim.R. 12(K).

## II. Alleged Error in Suppression of Evidence

{¶ 11} The State's sole assignment of error states that:

The Trial Court Erred in Suppressing the Results of Berry's Field Sobriety Tests. Trooper Shockey Had a Reasonable, Articulable Suspicion that Berry Might Have Been Driving Under the Influence.

{¶ 12} Under this assignment of error, the State presents two issues. The first is that the trial court incorrectly granted the suppression motion because Trooper Shockey testified about several specific articulable reasons for conducting field sobriety tests. The State's second point is that the trial court was not at fault for this error, due to our prior authority, which "compelled" the trial court's decision. According to the State, we should overrule our prior decisions in *Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, and *Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664.

{¶ 13} Initially, we will consider the State's challenge to the propriety of the suppression decision. "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 14} Article I, Section 14 of the Ohio Constitution and the Fourth Amendment to the U.S. Constitution both prohibit "unreasonable searches and seizures." *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). Nonetheless, "a traffic stop is

constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. We have said on numerous occasions that police officers in marked cruisers may stop vehicles for " 'any traffic violation no matter how slight, for the purpose of issuing a citation for the violation.' " *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264, ¶ 10 (2d Dist.), quoting *Spillers* at *2.

{¶ 15} Here, the traffic stop was clearly valid, and Berry did not challenge the stop. Nonetheless, the stop's validity did not allow Shockey to administer sobriety tests. Instead, to justify this continued detention, Shockey must have had "a reasonable, articulable suspicion" that Berry was operating his vehicle under the influence of drugs or alcohol. *State v. Hido*, 2d Dist. Clark No. 10CA0046, 2011-Ohio-2560, ¶ 9, citing *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761 (11th Dist.1998). These situations are quite fact-intensive, and the " 'circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *State v. Adams*, 2017-Ohio-7743, 97 N.E.3d 1137, ¶ 26 (2d Dist.), quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 16} We have not adopted any balancing tests for this evaluation, nor have we required consideration of a specific quantity of factors. *Id.* at ¶ 33. However, we have stressed the well-established law in our district that "traffic violations of a de minimus [sic] nature, combined with a slight odor of an alcoholic beverage, and an admission of having consumed 'a couple of beers,' are insufficient to support a reasonable, articulable suspicion of driving under the influence." *State v. Aicher*, 2018-Ohio-1866, 112 N.E.3d

85, ¶ 19, citing *Spillers* at *3 and *State v. Morgan*, 2d Dist. Clark No. 07-CA-67, 2007-Ohio-6691, ¶ 9.

**{¶ 17}** In concluding that Trooper Shockey lacked a reasonable, articulable suspicion that Berry was impaired, the trial court focused on the following facts: the de minimis nature of the violations giving rise to the stop (two marked lane violations and a speeding violation); the lack of an admission that Berry had consumed any alcoholic beverages or had been coming from a bar district; Shockey's notice of only a slight odor of alcohol; that while Berry's eyes were "bloodshot and glassy," his speech was not slurred and he did not either fumble or fail to be responsive to Shockey's requests; and Berry's lack of erratic driving. Doc. #31, pp. 6-7.

**{¶ 18}** The trial court's observations are supported by the record. We have emphasized that impairment "cases are often close calls based on the totality of the circumstances, the trial court's weighing of the evidence, and its determinations of credibility," and that "we are reluctant to second guess the trial court's determination of this factual issue." *State v. Nelson*, 2d Dist. Montgomery No. 27324, 2017-Ohio-2884, ¶ 21. Accordingly, we cannot conclude that the trial court erred in granting Berry's motion to suppress.

**{¶ 19}** The State's second point is that we should overrule our prior decisions in *Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, and *Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664, and their progeny. In particular, the State criticizes *Spillers*' alleged focus on the "irrelevance" of de minimis violations. According to the State, the proper emphasis should be on whether traffic violations could support an inference of impairment to a trained observer. State's Brief at p. 11. The State also notes a 2001

federal decision in which a magistrate judge disagreed with our reasoning. *See United States v. Frantz*, 177 F.Supp.2d 760, 762 (S.D.Ohio 2001) (indicating that the court could not understand our rationale).

{¶ 20} Ohio courts follow the doctrine of stare decisis, which "commands that a court should not lightly overrule its own precedential authority." *State v. Buelow*, 2d Dist. Montgomery No. 24570, 2012-Ohio-832, ¶ 15. The doctrine "is designed to provide continuity and predictability in our legal system. We adhere to stare decisis as a means of thwarting the arbitrary administration of justice as well as providing a clear rule of law by which the citizenry can organize their affairs." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 43.

{¶ 21} Under the test the Supreme Court of Ohio has established, a prior decision "may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." *Id.* at paragraph one of the syllabus.

{¶ 22} In *Spillers,* we recognized that the de minimis traffic violations justified a traffic stop. *Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, at *1. We then considered whether the officer had a reasonable, articulable suspicion of an OVI violation that justified administering sobriety tests. Among the facts the officer knew at the time were: "three or four marked lane violations, which the trial court found to have been 'de minimis,' followed by a significant interval in which Spillers drove home with neither any traffic violations, nor any remarkable driving, together with [the officer's] detection of a 'slight' odor of an alcoholic beverage, which he believed to have been beer, and Spillers'

admission that he had consumed 'a couple' of beers." *Id.* at *3.

{¶ 23} After reciting these facts, we said:

The issue is close. However, we conclude that traffic violations of a de minimis nature are not sufficient, combined with a slight odor of an alcoholic beverage, and an admission to having consumed "a couple" of beers, to support a reasonable and articulable suspicion of Driving Under the Influence. Few of us drive any appreciable distance without committing traffic violations that could properly be characterized as "de minimis." By themselves, then, traffic violations of a de minimis nature are not indicative of impaired driving. Otherwise, virtually every motorist could reasonably be suspected of impaired driving, since virtually every motorist, driving a distance of several miles, will fail to signal a lane change; touch, or even slightly cross, a line marking a lane; or exceed the speed limit slightly. Furthermore, a slight odor of an alcoholic beverage, without more, is not indicative of impaired driving. The law prohibits driving under the influence of alcohol; it does not prohibit driving after the mere consumption of an alcoholic beverage. *State v. Taylor* (1981), 3 Ohio App.3d 197, at 198, 444 N.E.2d 481.

The closer question, of course, is whether the conjunction of these facts - nominal traffic violations combined with a slight odor of alcohol - is sufficient to create a reasonable articulable suspicion of Driving Under the Influence. Because, in our experience, virtually the entire motoring public commits nominal traffic violations regularly, we conclude that even the

conjunction of these facts is insufficient to create a reasonable articulable suspicion of Driving Under the Influence. A slight odor of an alcoholic beverage is insufficient, by itself, to trigger a reasonable suspicion of DUI, and nominal traffic violations, being common to virtually every driver, add nothing of significance. Accordingly, we conclude that the trial court did not err in finding that the detention of Spillers for the purpose of administering a field sobriety test was unlawful.

*Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, at *3.

{¶ 24} *Dixon* is similar, with facts that included no erratic driving, only an "odor of alcohol," and glassy, bloodshot eyes in the early morning hours. *Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664, at *2.

{¶ 25} In some situations, we have cited *Spillers* for propositions not relevant here. *See, e.g., State v. Philipot*, 2d Dist. Montgomery No. 17895, 2000 WL 1062631, *3 (Aug. 4, 2000) (officers may initiate traffic stop based on any traffic violation, no matter how slight); *State v. Garrett*, 2d Dist. Greene No. 2000CA115, 2001 WL 585640, *1 (June 1, 2001) (defendant failed to timely object to a magistrate's decision and did not preserve error).

{¶ 26} We have also distinguished *Spillers* a number of times, based on the fact that the nature of the violation was not de minimis or that additional factors were present. *See, e.g., State v. Castle*, 2d Dist. Montgomery No. 21698, 2007-Ohio-5165, ¶ 12 (defendant was "repeatedly weaving outside his lane of travel"); *State v. Frady*, 142 Ohio App.3d 776, 778, 757 N.E.2d 12 (2d Dist.2001) (officer observed defendant "drift to the right, and come within a 'foot or two' of hitting two parked cars, then drift to the left,

crossing the center line and driving on the wrong side of the road. She then drifted back to the right, again coming within a foot of hitting parked cars."); *State v. Marshall*, 2d Dist. Clark No. 2001-CA-35, 2001-Ohio-7081, *2 (red eyes, speeding, and strong odor of alcohol); *State v. Cowell*, 2d Dist. Montgomery No. 19119, 2002 WL 31151372, *1 (Sept. 27, 2002) (odor of alcohol, admission of drinking two to three beers; officer also saw can of beer in car door, observed speeding, and heard sound of tries squealing against or hitting curb); *State v. Shepherd*, 2d Dist. Clark No. 2002-CA-55, 2002-Ohio-6383, ¶ 2 (observation of erratic driving, slurred speech, and strong odor of alcohol); *State v. Knox*, 2d Dist. Greene No. 2005-CA-74, 2006-Ohio-3039, ¶ 3 (defendant drove car without lights at 1:30 a.m., his eyes were glassy and bloodshot, he smelled strongly of alcohol, his speech was thick and slurred, and he admitted to having two beers); *State v. Castle*, 2d Dist. Montgomery No. 21698, 2007-Ohio-5165, ¶ 12 (repeatedly weaving out of lane and jerking back in distinguished *Spillers* and, itself, was evidence of impairment; defendant also had very red and glassy eyes, strong odor of alcohol); *Aicher*, 2018-Ohio-1866, 112 N.E.3d 85, ¶ 19-24 (2d Dist.) (comparing case factually with *Spillers* and other cases, and finding that *Spillers* was factually distinguishable).

{¶ 27} In addition, we have found *Spillers* factually similar in a number of cases. *See, e.g., State v. Segi*, 2d Dist. Montgomery No. 18267, 2000 WL 1162035, *2 (Aug. 18, 2000) (no indicia of intoxication other than strong odor of alcohol and defendant's admission that he had been drinking did not furnish probable cause for arrest)[1]; *State v. Morgan*, 2d Dist. Clark No. 07-CA-67, 2007-Ohio-6691, ¶ 9 (facts similar to *Spillers*); *State*

---

[1] *Segi* involved probable cause for an arrest, not reasonable suspicion to perform field sobriety tests.

*v. Swartz*, 2d Dist. Miami No. 2008 CA 31, 2009-Ohio-902, ¶ 14 and 16 ("de minimis traffic violation, coupled with glassy, bloodshot eyes and an unspecified odor of alcohol is insufficient justification to conduct field sobriety tests").

**{¶ 28}** In 2002, we said that "it appears that the smell of alcohol and glassy eyes at a late hour, without more, is not sufficient to conduct a field sobriety test. * * * However, we conclude that the additional element of erratic driving or specifically a 'strong' odor of alcohol seem to tip the scales in favor of allowing the tests." *State v. Downing*, 2d Dist. Greene No. 2001-CA-78, 2002-Ohio-1302, *2 (March 22, 2002). Before and after *Spillers*, we have also stressed that " ' "a strong odor of alcohol alone" ' is enough to provide an officer with " 'reasonable suspicion" ' of criminal behavior." *State v. Marshall*, 2d Dist. Clark No. 2001-CA-35, 2001 WL 1658096, *2 (Dec. 28, 2001), quoting *State v. Haucke*, 2d. Dist. Clark No. 99 CA 77, 2000 WL 282304, *2 (March 17, 2000). (Other citation omitted.) *Accord State v. Reed*, 2d Dist. Montgomery No. 23357, 2010-Ohio-299, ¶ 47.

**{¶ 29}** More recently, we have again emphasized that:

> Traffic violations of a de minimus [sic] nature are not sufficient, combined with a slight odor of an alcoholic beverage, and an admission of having consumed a "couple" beers, to support a reasonable and articulable suspicion of DUI. *State v. Spillers* (March 24, 2000), Darke App. No. 1504. This standard is fact-sensitive, and all evidence suggesting an alcohol offense should be examined together to decide whether the officer has reasonable suspicion to administer a field sobriety test.

*State v. Brewer*, 2d Dist. Montgomery No. 23442, 2010-Ohio-3441, ¶ 24.

{¶ 30} In one recent case, a dissenting judge disagreed with the majority's conclusion that insufficient indicia of impairment existed. The judge concluded that "the trial court's factual conclusions regarding [defendant's] excursions into the opposite lane of travel and, on the second occasion, driving across her lane of travel nearly striking the curb on the right side of the road coupled with the moderate odor of alcohol emanating from [the defendant] and [her] denial of recent alcohol consumption in the face of a moderate odor of alcohol are specific and articulable facts which * * * compel the conclusion there existed a reasonable, articulable suspicion [the defendant] was impaired." *State v. Nelson*, 2d Dist. Montgomery No. 27324, 2017-Ohio-2884, ¶ 25 (Tucker, J., dissenting).[2]

{¶ 31} As support for its view that our decisions in *Spillers* and like cases were incorrect, the State also cites other federal cases. In addition, the State contends that an approach of the Vermont Supreme Court is more appropriate. Having reviewed the cited cases, we disagree.

{¶ 32} In *State v. Santimore*, 2009 VT 104, 186 Vt. 638, 987 A.2d 332, a state statute allowed administration of a portable breath test "[w]hen a law enforcement officer has reason to believe that a person may be violating or has violated" the law pertaining to legal alcohol limits. *Id.* at ¶ 6, quoting 23 V.S.A. 1203(f). The defendant claimed that this wording required officers to satisfy a stringent standard to administer the test. However, the court disagreed, stressing that officers need not have incontrovertible proof.

---

[2] There was also evidence in *Nelson* that the defendant's eyes were " 'bloodshot' and 'somewhat watery,' " and that she had expressed some surprise or confusion about the fact that it was Saturday rather than Friday. (She was stopped at 9:00 p.m. on Saturday.) *Nelson* at ¶ 8 and 10.

Instead, administering the test required the existence of "reasonable, articulable facts supporting the belief that criminal behavior is afoot." *Id.* at ¶ 9.

**{¶ 33}** The court did say, as the State suggests, that the standard was satisfied where the officer stopped the defendant for speeding, smelled an odor of alcohol, and observed that the defendant's eyes were "bloodshot and watery." *Id.* at ¶ 11. Unfortunately, the recited facts in *Santimore* are sparse, and the odor's level (slight, moderate, strong) is not indicated. The court did note, as a general rule, that "[i]ndicia of intoxication, such as an officer's detection of the odor of alcohol emanating from a driver as well as observation of a driver's watery and bloodshot eyes, are sufficient to establish reasonable suspicion of DUI." *Id.* at ¶ 8.

**{¶ 34}** The cases *Santimore* cites for this general rule are more helpful, as they contain more detailed facts. For example, in *State v. Mara*, 2009 VT 96A, 186 Vt. 389, 987 A.2d 939, the defendant was stopped for a taillight violation. However, when the officer spoke with the defendant, he smelled a moderate odor of alcohol. The defendant's eyes were also watery and bloodshot, and he admitted to having drunk 24 ounces of beer earlier in the evening. *Id.* at ¶ 2. In another cited case, the defendant had been involved in an accident in a parking lot at 3:00 a.m. He admitted consuming six beers since early afternoon, his breath had a mild odor of alcohol, and "he was emotional and clearly upset about the damage to his car." *State v. Orvis*, 143 Vt. 388, 389-390, 465 A.2d 1361 (1983).

**{¶ 35}** The facts of these cases are not unlike situations where we affirmed decisions denying suppression. *See, e.g., State v. Criswell*, 162 Ohio App.3d 391, 2005-Ohio-3876, 833 N.E.2d 786, ¶ 3 (2d Dist.) (speeding, moderate odor of alcohol, bloodshot

and glassy eyes, and admission of two beers); *State v. Mahaffey*, 2d Dist. Greene No. 2003 CA 56, 2004-Ohio-1023, ¶ 2 (several traffic violations, moderate odor of alcohol, admission of drinking, and difficulty finding paperwork); *Aicher*, 2d Dist. No. 27570, 2018-Ohio-1866, 112 N.E.3d 85, ¶ 5 (expired plates, moderate odor of alcohol, faint odor of burnt marijuana, glassy eyes, a little slurred speech, admission of a couple of drinks). In short, we do not see the approach of the Vermont Supreme Court as more appropriate, or even distinct, nor do we find any reason to overrule our prior authority. As we have often stressed, these decisions are " 'very-fact intensive.' " *Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264, at ¶ 13, quoting *State v. Wells*, 2d Dist. Montgomery No. 20798, 2005-Ohio-5008, ¶ 9.

{¶ 36} As a final matter, the other federal cases that the State cites are either not on point or support our decision in *Spillers*. For example, the State cites *Amundsen v. Jones*, 533 F.3d 1192, 1199 (10th Cir.2008), for a holding that " 'drifting onto the shoulder creates reasonable suspicion of driving under the influence.' " State's Brief, p. 11. *Amundsen* was a civil action brought against an officer for arresting a motorist who was found, after toxicology tests, not to be intoxicated. *Id*. at 1194. After the district court denied summary judgment to the police officer on her assertion of qualified immunity, she appealed. *Id*. at 1196.

{¶ 37} On appeal, the officer contended that the motorist's "erratic driving by itself created reasonable suspicion of intoxication." *Id*. at 1198. The court noted that its consideration was whether the erratic driving justified the initial stop, and if so, whether the sobriety tests then exceeded the scope of the stop. *Id*. In this regard, the court commented that the Tenth Circuit Court of Appeals had "held on multiple occasions that

weaving between lanes provides reasonable suspicion of driving under the influence." *Id*. at 1198-1199. The court then cited a number of cases which held that weaving, drifting, and swerving created reasonable suspicion of driving under the influence. *Id*. at 1199, citing *United States v. Ozbirn*, 189 F.3d 1194 (10th Cir.1999) and others.

{¶ 38} The court was careful to observe in *Amundsen* that:

There are limits, however, on the extent to which weaving can serve as a factor creating reasonable suspicion of driving under the influence. For instance, an isolated incident of crossing into another lane will not ordinarily create reasonable suspicion of driving while impaired. * * * Nor will weaving within a lane, without more, ordinarily create reasonable suspicion of driving under the influence. *United States v. Lyons*, 7 F.3d 973, 976 (10th Cir.1993) ("*Indeed, if failure to follow a perfect vector down the highway or keeping one's eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of privacy.*") * * *.

(Citations omitted) *Amundsen* at 1199.

{¶ 39} The italicized statement is somewhat consistent with our observation in *Spillers* that "virtually the entire motoring public commits nominal traffic violations regularly." *Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, at *3. Thus, *Amundsen* supports our position.

{¶ 40} The State also cites *Navarette v. California*, 572 U.S. 393, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), for the proposition that even "an anonymous tip reporting *one* instance of reckless driving was sufficient reasonable suspicion of impairment to warrant

a stop of the defendant's vehicle." (Emphasis sic.) State's Brief at p. 11. In *Navarette*, an anonymous caller reported to police that she been run off the road, and described a specific vehicle along with its license plate number. *Id.* at 395. Shortly thereafter, the police stopped the vehicle on the same road and eventually found 30 pounds of marijuana. *Id.* at 396. The issue in *Navarette* was not whether reasonable, articulable suspicion existed for a field sobriety test; the court was concerned only with whether the tip justified the initial traffic stop. *Id.* at 395.

{¶ 41} The court found the tip reliable for several reasons, including the use of the 911 emergency system, which can identify important information about callers, the timeline of events, and the fact that "[a] driver's claim that another vehicle ran her off the road * * * necessarily implies that the informant knows the other car was driven dangerously." *Id.* at 399-401. In view of these comments, the State's focus on the fact that the police received a report of "one instance" of reckless driving is misplaced. The court was discussing the reliability of tips themselves, and the fact that only one tip was received was not the issue.

{¶ 42} During its discussion, the court also considered whether the 911 caller's report of being run off the road "created reasonable suspicion on an ongoing crime *such as* drunk driving as opposed to an isolated instance of past recklessness." (Emphasis added.) *Id.* at 402. In connection with this point, the court observed that under a "commonsense approach" using everyday practical and factual considerations, "reasonable and prudent" persons, not "legal technicians" could "appropriately recognize certain driving behaviors as sound indicia of drunk driving." *Id.* The listed indicia were: (1) weaving all over the roadway; (2) crossing over the center line on a high way and

almost causing several head on collisions; (3) driving all over the road and weaving back and forth; and (4) driving in the median. (Citations and internal quotations omitted.) *Id.* Notably, these indicia do not include de minimis traffic violations.

**{¶ 43}** Moreover, *Navarette* involved whether there was reasonable suspicion for a traffic stop. That was not an issue here. *Navarette* also did not involve the reasonable suspicion needed for field sobriety tests. Finally, *Navarette* adds nothing to standards Ohio has long applied. *See, e.g., Maumee v. Weisner*, 87 Ohio St.3d 295, 296, 302-303, 720 N.E.2d 507 (1999) (telephone informant's tip of report of erratic driving, i.e., "weaving all over the road", was reliable enough to warrant investigative traffic stop on suspicion of driving under the influence).

**{¶ 44}** Finally, the State contends that when courts decide whether reasonable suspicion exists, they do not have to rule out the possibility of innocent conduct. State's Brief at p. 12, citing *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). According to the State, our decisions in *Spillers* and *Dixon* require us to do that.

**{¶ 45}** In *Arvizu*, the court emphasized that the totality of the circumstances is the appropriate test for determining reasonable suspicion, and that courts may not evaluate each articulated reason for the stop in isolation. *Id.* at 274. The Supreme Court of Ohio has also said that "[t]he 'reasonable and articulable suspicion' analysis is based on the collection of factors, not on the individual factors themselves." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 19, citing *Arvizu* at 274.

**{¶ 46}** *Batchili* involved a defendant who was stopped for a marked lane violation, and the officer prolonged the stop due to a suspicion that he was transporting drugs. *Id.*

at ¶ 2-5.   At the suppression hearing, the officer listed numerous reasons why she had reasonable, articulable suspicion, including that the driver failed to stop for two miles after she signaled him, that the van had tinted windows and a cargo hold with boxes in disarray and covered by blankets, that the driver did not own the vehicle and gave conflicting answers about who owned the vehicle, and that the driver had shaking hands and did not make eye contact.   The officer also smelled deodorizer in the vehicle.   *Id*. at ¶ 4-5.

{¶ 47} In reviewing the appellate court's conclusion that the driver had been unconstitutionally detained, the Supreme Court of Ohio first noted that the appellate court failed to analyze whether the length of the detention was reasonable.   *Id*. at ¶ 11.   The court then assumed that the detention was actually prolonged and considered whether the officer had a reasonable, articulable suspicion of criminal activity beyond what had prompted the original stop.   *Id*. at ¶ 15.   According to the Supreme Court, the appellate court had departed at this point from established law.   *Id*. at ¶ 16.   Specifically, the appellate court had improperly substituted its own judgment for "each of the reasons listed supporting [the officer's] "justification for her articulable suspicion and concluded that because each had an innocent explanation, her suspicion was not reasonable."   *Id*. at ¶ 18.   Instead of using this approach, the appellate court should have considered the collection of factors.   *Id*. at ¶ 19.

{¶ 48} As an example, it is true that tinted windows, when considered in isolation, may not be indicative of criminal activity.   We also agree that reasonable suspicion is based on a collection of factors.   However, we disagree that our decisions (which were made close to a quarter of a century ago and also continued to be cited well after *Arvizu* and *Batchili* were decided), have evaluated reasonable suspicion based on something

other than the totality of the circumstances. We have repeatedly said that the test is based on the totality of the circumstances. *See, e.g., State v. Brown*, 2016-Ohio-1258, 61 N.E.3d 922, ¶ 8 (2d Dist.); *Aicher*, 2018-Ohio-1866, 112 N.E.3d 85, at ¶ 17.

{¶ 49} We have also said that "[t]he fact that innocent explanations *could* exist for the signs of impairment [an officer] saw did not preclude reasonable, articulable suspicion of intoxication. Indeed, the Ohio Supreme Court has rejected the proposition that reasonable, articulable suspicion cannot exist where each factor upon which an officer relies has a potentially innocent explanation." (Emphasis sic.) *State v. Greaves*, 2d Dist. Clark No. 2013-CA-91, 2014-Ohio-2446, ¶ 9, citing *Batchili* at ¶ 18-19.

{¶ 50} In *Greaves*, the defendant was stopped after committing a traffic violation (swerving back and forth between lanes and straddling lanes), and was arrested for intoxication after the officer detected a strong odor of alcohol and "red shot and glassy" eyes. In addition, the defendant was a little disoriented and admitted he had been drinking earlier that night when he got off work. *Id.* at ¶ 3 and 10. The defendant relied on the lack of any obvious impairment to motor skills when he exited the car, and the officer's admission to two points: (1) smelling alcohol does not mean an individual is impaired; and (2) "the time of day or a lack of sleep can affect a person's eyes." *Id.* at ¶ 6.

{¶ 51} As we stressed earlier, however, our cases have said that a strong odor of alcohol alone will provide reasonable suspicion that an individual is intoxicated. *Marshall*, 2d Dist. Clark No. 2001-CA-35, 2001 WL 1658096, at *2. This is inconsistent with a completely innocent explanation, and under the totality of the circumstances, the arresting officer in *Greaves* clearly had a reasonable, articulable suspicion that the

defendant was intoxicated.

{¶ 52} Based on the preceding discussion and the facts of this case, we see no basis for overruling our prior decisions in *Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, and *Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664 at this time. Accordingly, the State's sole assignment of error is overruled.

III.   Conclusion

{¶ 53} The State's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Adelina E. Hamilton
Hon. Michael W. Krumholtz